IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSHUA RAY CASTANEDA,

                    Plaintiff,

        v.                              CASE NO. 22-3139-SAC

GREAT BEND POLICE DEPARTMENT, et al.,

                    Defendants.

<u>MEMORANDUM AND ORDER</u>

Plaintiff Joshua Ray Castaneda is currently a patient at Larned State Hospital (LSH) in Larned, Kansas pursuant to an order of the Barton County District Court. Plaintiff is facing state criminal charges in Barton County that were filed in 2020, and he was initially held as a pretrial detainee at the Barton County Detention Center (BCDC). He filed this pro se civil action pursuant to 42 U.S.C. § 1983 based on events that occurred at the BCDC and at LSH. He has also filed a motion for appointment of counsel (Doc. 3), which the Court will deny without prejudice, as explained below. The Court has identified several deficiencies in the complaint, which are set forth below and which leave the complaint subject to dismissal. The Court will direct Plaintiff to file a complete and proper amended complaint curing these deficiencies. If Petitioner fails to do so in the allotted time, this matter may be dismissed.

**I.   Nature of the Matter before the Court**

Plaintiff names as Defendants the Great Bend Police Department (GBPD); the Barton County Sheriff's Office (BCSO); Detective Shane Becker, Officer Ryan Hanhardt, Officer Jazmine Bell, Officer Malik Moon, Officer Paul Leiker, Sergeant Ryan Deyound, Detective Joel Hamlin, Detective Heather McLemore, Detective Heather Smith, Officer Taylor Reed, and Officer Alex Loomis of the GBPD; Brian Bellinder, Brad Patzner, Karen Smith, Lloyd Lewis, Amber Allen, Bryan Volkel, Jason Blundell of the BCSO; Barton County District Attorney Mathew Levi Morris; Barton County Assistant District Attorneys Douglas Matthews and John Colin Reynolds; LCPC Jennifer Johnson of The Center for Counseling and Consultation; Dr. Roy Daum and psychologist Travis H. at LSH; and attorneys Benjamin J. Fisher, Heather Helvie, and Bradley Steen, who represented Plaintiff in the Barton County criminal proceedings. (Doc. 1, p. 1-9, 16-20.)

As the factual background for this complaint, Plaintiff asserts[1] that on July 19, 2020, there was an altercation at a bar during which an individual referred to Plaintiff's race in a derogatory manner and shot Plaintiff. *Id.* at 10. Plaintiff left the scene and was arrested two days later by Defendants Reed and Loomis and another GBPD officer, while other members of the GBPD and the BCSO watched. *Id.* Defendant Reed also arrested Plaintiff's sister, who was recording Plaintiff's arrest on her cell phone, and seized

---

[1] Although Plaintiff has provided great detail in his complaint, the Court will not recite all of the alleged facts here.

2

her phone. Plaintiff's sister was later released and the charges against her were dismissed. Plaintiff, on the other hand, was later charged with attempted murder and aggravated assault. *Id.*

Since that time, Plaintiff has been detained by the State pending trial on the criminal charges, part of the time at the BCDC and part of the time at LSH. Throughout his incarceration, he alleges, the GBPD and the BCSO have conspired to convict him, conducted illegal searches and seizures, libeled and slandered him, failed to properly investigate the crimes with which he is charged, filed false affidavits in support of the charges against him, failed to obtain evidence, and improperly released his impounded vehicle; BCDC staff violated his attorney-client privilege, subjected him to inhumane living conditions, and denied him adequate medical care; and the Barton County District Attorney and Assistant District Attorneys overcharged him and worked with the GBPD to cover up repeated attempts on Plaintiff's life. *Id.* at 10-11.

Plaintiff further asserts that he underwent a mental assessment that was done without a court order and he was sent to LSH in retaliation for not agreeing to a proposed plea bargain. *Id.* at 11. At LSH, Plaintiff contends that his requests to see a dentist and a physician have been denied and he has not received a proper response to grievances he filed. *Id.* at 11-12.

In Count I, Plaintiff asserts that his rights under the Due Process Clause of the Fourteenth Amendment to the United States

Constitution were violated by officers and employees of the GBPD and the BCSO. (Doc. 1, p. 13, 15.) Plaintiff alleges that since July 19, 2020, the individuals involved in the investigation of the shooting have committed improper and illegal acts, including failing to properly secure and process the crime scene at the bar, planting evidence to frame him, failing to send evidence for forensic testing, submitting false witness statements, failing to follow up with witnesses and other leads, failing to file narrative reports, and denying him access to documents. *Id.* at 15-16. Plaintiff also claims in Count I that on October 16, 2020, Defendant Johnson conducted a mental assessment of him and chose to believe his claim that he was being tortured through multiple implants was a delusion. She then filed with the Barton County District Court an evaluation on Plaintiff's competency to stand trial even though the court had not ordered a competency evaluation. *Id.* at 16.

In Count II, Plaintiff alleges the violation of his rights under the Compulsory Process Clause of the Sixth Amendment to the United States Constitution; he also appears to allege that he received ineffective assistance of counsel in violation of the Sixth Amendment. (Doc. 1, p. 13, 16.) As support for Count II, Plaintiff details his encounters with Defendants Fisher, Helvie, and Steen. *Id.* at 16-20.

In Count III, Plaintiff alleges the violation of the Eighth Amendment's prohibition against cruel and unusual punishment. (Doc.

4

1, p. 14.) In support, Plaintiff alleges that in approximately 2013, a dentist placed implants without Plaintiff's knowledge that to this day cause Plaintiff "excruciating mental torture, torment, manipulation, deceit, chaos, trauma, and all[-]around mental anguish." *Id.* at 20. Plaintiff alleges that Defendants Bellinder and Patzner as well as the BCDC nurse denied his multiple requests to see a physician, and Defendants Daum and Travis H. refused to believe him about the torture, calling him delusional. Defendant Travis H. also disregarded Plaintiff's claims that the shooting in July 2020 was a hate crime. *Id.* at 21. Defendant Johnson was willfully negligent and conspired with the BCSO to cover up his torture. *Id.* Additionally, Plaintiff alleges that in October or November of 2020, while at the BCDC, he was assaulted and Defendant Karen Smith denied his request to see a nurse to evaluate injuries he suffered. *Id.* at 20. Finally, Plaintiff asserts that Defendant Reynolds, Steen, and Kansas judge Gary Hipp, working with Defendant Daum and the Barton County Attorney's Office allowed the fabricated results of his competency evaluation to be admitted in his criminal case. *Id.* at 22.

In Count IV, Plaintiff alleges the violation of his Fourth Amendment right to be protected against unreasonable searches and seizures. (Doc. 1, p. 15.) He bases this claim on his allegation that during his arrest, Defendant Becker illegally seized and searched Plaintiff's sister's cell phone. *Id.* at 23. Plaintiff also

asserts that Defendant Becker told Defendant Deyound to improperly impound a white Toyota Corolla and that Defendants Becker and Volkel then illegally searched the vehicle, citing a security video to which Plaintiff has been denied access. *Id.*

As relief, Plaintiff seeks "documented reprimands" of the individuals responsible for violating his constitutional rights, an order prohibiting retaliation against him for bringing this action, and an award of compensatory, nominal, and punitive damages. *Id.* at 26.

## II. Screening Standards

Because Plaintiff is a prisoner, the Court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). During this screening, the Court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## III. Discussion

### A.   Joinder of Claims and Parties

The Federal Rules authorize the Court, on its own initiative at any stage of the litigation, to drop any party and sever any claim. Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver*

*Sheriff's Dept.*, 415 Fed. Appx. 877, 881 (10th Cir. 2011) (holding that to remedy improperly joined claims or parties, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately).

Some or all of the claims in the complaint are subject to dismissal because Plaintiff appears to have improperly joined parties and/or unrelated claims in this action. Federal Rule of Civil Procedure[2] 20(a)(2) governs permissive joinder of defendants and pertinently provides:

> (2) Defendants. Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party."

While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp.

---

[2] The Federal Rules of Civil Procedure apply to suits brought by prisoners. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  Pro se litigants must "follow the same rules of procedure that govern other litigants."  See *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007); *McNeil v. United States*, 508 U.S. 106, 113 (1993)(federal rules apply to all litigants, including prisoners lacking access to counsel).

2d 1210, 1225 (D. Kan. 2001)(citation omitted). The Court of Appeals for the Seventh Circuit has explained that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In other words, under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits." *Id.*

In sum, under Rule 18(a), Plaintiff may bring multiple claims against a single defendant. Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact. He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

It is not clear from the complaint that Plaintiff's multiple claims involve all named defendants or that his claims against all defendants arise from the same transaction or occurrence and involve common questions of law or fact. Thus, the complaint violates both Rule 18(a) and 20(a)(2). It names multiple defendants not shown to be connected to all claims raised in the complaint by a common occurrence or question of fact or law and it contains claims not related to other claims against different defendants.

8

Plaintiff therefore is required to file an amended complaint stating (1) only those claims that arise against a single defendant or, if he wishes to name multiple defendants, (2) stating only those claims that arise from the same transaction or occurrence and have common questions of fact or law. Put another way, Plaintiff should set forth in the amended complaint the occurrence(s) he will hereinafter pursue in accordance with Rules 18 and 20, and limit his facts and allegations to properly joined defendants and occurrences. Alternatively, Plaintiff must allege facts in his complaint showing that all counts arise out of the same transaction, occurrence, or series of transactions or occurrences; and that a question of law or fact common to all defendants will arise in this action.

**B. Relief Sought**

In part, Plaintiff seeks as relief "documented reprimands" of the individuals responsible for violating his constitutional rights. (Doc. 1, p. 26.) It is not clear what Plaintiff means by "documented reprimands" and, to the extent that Petitioner seeks a employment-related reprimand, this Court lacks the authority to order such relief. *See, e.g., Dockery v. Ferry*, No. 08-277, 2008 WL 1995061, at *2 (W.D. Pa. May 7, 2008)(finding that the court cannot order a local government to terminate a police officer's employment). If Plaintiff wishes to pursue "documented reprimands," he must explain in the amended complaint what he means by that term.

## C. Defendants

### i. The Barton County Sheriff's Office (BCSO)

Plaintiff has named as a Defendant the BCSO. To impose § 1983 liability on the county and its officials for acts taken by its employee, Plaintiff must show that the employee committed a constitutional violation and that a county policy or custom was "the moving force" behind the constitutional violation. *See Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998)(citing *see Monell v. Department of Social Services*, 436 U.S. 658, 695 (1978)); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385-86 (1989). Plaintiff has pointed to no BCSO policy or custom as the moving force behind the constitutional violations alleged in this matter, so he has failed to allege a § 1983 claim against the BCSO.

### ii. Defendant Great Bend Police Department (GBPD)

This action is subject to dismissal as against the GBPD. A police department is not a suable entity under § 1983 because it has no legal identity apart from the city. *See Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985). Like a county, in order to find a city liable under § 1983, a city policy or custom must have been the moving force behind the constitutional violation. *Id.* Plaintiff has made no such allegations here, nor has he named the City of Great Bend as a defendant.

### iii. Defendants Morris, Matthews, and Reynolds

Plaintiff's claims against Barton County District Attorney Morris and Assistant District Attorneys Matthews and Reynolds are also subject to dismissal. "Prosecutors are absolutely immune from civil liability for damages for 'acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his [or her] role as an advocate for the State.'" *Stein v. Disciplinary Bd. of Supreme Court of N.M.*, 520 F.3d 1183, 1193 (10th Cir. 2008).

### iv. Defendant Jennifer Johnson

This action is subject to dismissal as against Defendant Johnson. To state a claim under § 1983, Plaintiff "must show that the alleged (constitutional) deprivation was committed by a person acting under color of state law." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). The "under color of state law" requirement is a "jurisdictional requisite for a § 1983 action." *Id.* at 42. No matter how discriminatory or wrongful a defendant's actions, merely private conduct does not satisfy the "under color of" element and therefore no section 1983 liability exists. *See Brentwood Academy v. Tennessee Secondary Athletic Ass'n*, 531 U.S. 288, 294-96 (2001). Because Plaintiff concedes that Defendant Johnson was not acting under the color of state law (*see* Doc. 1, p. 7), he has failed to allege a § 1983 claim against her.

### v. Defendants Fisher, Helvie, and Steen

11

Similarly, the claims against Defendants Fisher, Helvie, and Steen are subject to dismissal. The United States Supreme Court has held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 324 (1981). Although it is clear from the complaint that Plaintiff was dissatisfied by the assistance he received from Fisher, Helvie, and Steen and that he believes that they were conspiring with state actors, he has not alleged specific facts that support a plausible claim that Fisher, Helvie, or Steen stepped outside the traditional role of public defender. Thus, Plaintiff has failed to allege a § 1983 claim against Defendants Fisher, Helvie, and Steen.

### D. Claims that Involve Plaintiff's State Criminal Case

Based on the information now before the Court, the Court is prohibited from awarding monetary damages in relation to Plaintiff's claims related to his arrest; the investigation into the July 19, 2020 incident; and the State criminal proceedings against him, including the competency evaluation process. In *Younger v. Harris*, 401 U.S. 37, 46 (1971), the United States Supreme Court instructed that principles of comity dictate that generally a federal court is not to intervene in ongoing state criminal proceedings unless "irreparable injury" is "both great and immediate." The Tenth Circuit has instructed that "the *Younger*

12

doctrine extends to federal claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding." *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004).

"The *Younger* doctrine requires a federal court to abstain from hearing a case where . . . (1) state judicial proceedings are ongoing; (2) [that] implicate an important state interest; and (3) the state proceedings offer an adequate opportunity to litigate federal constitutional issues." *Buck v. Myers*, 244 F. App'x 193, 197 (10th Cir. 2007) (unpublished) (citing *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). "Once these three conditions are met, *Younger* abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain." *Buck*, 244 F. App'x at 197 (citing *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)).

Plaintiff's state-court criminal case is ongoing, and the State of Kansas has an important interest in prosecuting crimes that violate Kansas laws. Moreover, the state courts provide Plaintiff the opportunity to present his challenges, whether in district court or, if necessary, on appeal or in other proceedings.[3]

---

[3] In fact, it appears from the complaint that Plaintiff is currently availing himself of some avenues for state-court relief, as he informs the Court he mailed a motion for habeas corpus relief to the Barton County District Court to be

Although "[t]he *Younger* abstention doctrine does not apply 'in case of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown,'" a petitioner asserting such circumstances must make "'more than mere allegations of bad faith or harassment.'" *Amanatullah v. Co. Bd. of Med. Examiners*, 187 F.3d 1160, 1165 (10th Cir. 1999). Plaintiff has not done so in this action.

In addition, to the extent that Plaintiff wishes to pursue non-monetary relief based on his claims that involve the ongoing criminal proceedings, this Court's ruling would impugn any future conviction. Thus, the Court may not act on those claims at this time, but may only "stay the civil action until the criminal case or the likelihood of a criminal case is ended." *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (citations omitted).

**E.   Failure to State a Claim**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988)(citations omitted); *Northington*

---

filed. The complaint asserts that Plaintiff mailed the motion on June 16, 2020. (Doc. 1, p. 25.) The online records of the Barton County District Court show that a motion for habeas corpus relief was filed on June 30, 2022 in *Joshua Ray Castaneda v. State of Kansas*, case number 2022-CV-000072. For further information on the status of that matter, Petitioner should contact the Barton County District Court.

*v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). The Court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).

On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570. The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed (the plaintiff); and, what specific legal right the plaintiff believes the defendant

15

violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007). The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

The Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (quotation marks and citations omitted). Under this new standard, "a plaintiff must nudge his claims across the line from conceivable to plausible." *Smith*, 561 F.3d at 1098 (quotation marks and citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged (his) claims across the line from conceivable to plausible." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)(citing *Twombly*, at 1974).

Count IV alleges the violation of Plaintiff's Fourth Amendment right to be protected against unreasonable searches and seizures,

based on the allegations that (1) Defendant Becker illegally seized and searched Plaintiff's sister's cell phone and (2) certain defendants were involved in the illegal impound and search of a white Toyota Corolla. As explained below, however, the allegations in the current complaint are insufficient to plausibly demonstrate that Plaintiff has standing to pursue Count IV.

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). To assert a Fourth Amendment violation, Plaintiff "must first demonstrate that he has standing to object to the search." *See United States v. Poe*, 556 F.3d 1113, 1121 (10th Cir. 2009) (citation omitted). This standing requires an individual "to show 'that he had a subjective expectation of privacy in the [item] searched and that society is prepared to recognize that expectation as reasonable.'" *Id.* (quoting *United States v. Rhiger*, 315 F.3d 1283, 1285 (10th Cir. 2003)). To determine if an individual's Fourth Amendment rights were implicated in a seizure or search, the Court  must ask "not merely whether the [individual] had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched." *See United States v. Salvucci*, 448 U.S. 83, 93 (1980).

The complaint alleges that the cell phone in question belonged to Plaintiff's sister and that she was using it at the time it was

17

seized. Similarly, even liberally construing the complaint, it does not allege that Plaintiff had a reasonable expectation of privacy in "the white Toyota corolla"; in fact, Plaintiff appears to question the existence of video that allegedly shows him driving the vehicle, implying that he had no connection to the vehicle at all. The allegations in the complaint do not support a plausible conclusion that Plaintiff had a reasonable expectation of privacy in either the cell phone or the Toyota. Accordingly, Plaintiff has failed to state a claim in Count IV on which relief can be granted.

## IV.   Amended Complaint Required

For the reasons stated above, it appears part or all of the current complaint is subject to dismissal. Plaintiff is therefore given the opportunity to file a complete and proper amended complaint upon court-approved forms in which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim of federal constitutional violation and show a cause of action in federal court; (3) alleges sufficient facts to show personal participation by each named defendant; (4) cures the other deficiencies discussed herein. The Court will direct the clerk to send Plaintiff the appropriate form.

Plaintiff must write the number of this case (22-3139) on the first page of the amended complaint. He must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10. He should also refer to each defendant again in the body of the amended

18

complaint, where he must allege facts describing the unconstitutional acts taken by each defendant, including dates, locations, and circumstances. Although Plaintiff may attach additional pages to the complaint as needed, he should not utilize the form merely to refer the Court to an attached memorandum.

The amended complaint is not simply an addendum to the original complaint; it completely replaces it. Any claims or allegations not included in the amended complaint are no longer before the Court. Plaintiff may not simply refer to an earlier pleading. The amended complaint must contain all allegations and claims that Plaintiff intends to pursue in this action, including those to be retained from the initial complaint.

If Plaintiff does not file an amended complaint within the prescribed time, this matter will be decided based upon the current deficient complaint. If Plaintiff does file an amended complaint within the prescribed time, the Court will screen the amended complaint and issue further orders.

**V.    Motion For Appointment of Counsel (Doc. 3)**

Plaintiff has also filed a motion for appointment of counsel (Doc. 3), which the Court has considered. As Plaintiff acknowledges, there is no constitutional right to appointment of counsel in a civil case. *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d

994, 996 (10th Cir. 1991). The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant appointment of counsel. *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006)(citing *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (citing *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, the Court has considered "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979; *Hill*, 393 F.3d at 1115. The Court concludes in this case that (1) it is not clear at this juncture that plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not yet clarified and may not be complex; and (3) plaintiff appears capable of adequately presenting facts and arguments. Thus, the Court will deny the motion without prejudice to refiling if the material circumstances change.

**IT IS THEREFORE ORDERED** that the Motion for Appointment of Counsel (Doc. 3) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff is granted to and

including August 19, 2022, to submit a complete and proper amended complaint as directed. The clerk is directed to send 1983 forms and instructions to Plaintiff. The failure to timely file an amended complaint will result in this matter proceeding on the current, deficient complaint.

**IT IS SO ORDERED.**

DATED:  This 19th day of July, 2022, at Topeka, Kansas.


S/ Sam A. Crow

SAM A. CROW
U.S. Senior District Judge

21