**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**JOSHUA RAY CASTANEDA,**

                      **Plaintiff,**

      v.                                                    CASE NO. 22-3139-SAC

**GREAT BEND POLICE DEPARTMENT, et al.,**

                      **Defendants.**

**MEMORANDUM AND ORDER**

**I. Nature of the Matter before the Court**

This matter is a pro se civil rights action pursuant to 42 U.S.C. § 1983 filed by Kansas prisoner Plaintiff Joshua Ray Castaneda. Plaintiff was initially detained on state criminal charges and held as a pretrial detainee at the Barton County Detention Facility (BCDF) in Great Bend, Kansas, but then was transferred to Larned State Hospital (LSH) in Larned, Kansas for a competency evaluation. It appears that Plaintiff was found not competent to stand trial and there was no substantial probability that he would attain competency in the foreseeable future. As a result, in compliance with state statutes, the Barton County District Court ordered the commencement of involuntary commitment proceedings concerning Plaintiff. *See* K.S.A. 22-3303. Those proceedings are underway in Pawnee County, where LSH is located. This matter, however, concerns events that occurred at both LSH and the BCDF.

1

**II.   The Initial Complaint**

Plaintiff filed his initial complaint on July 5, 2022. (Doc. 1.) Because Plaintiff was a prisoner at the time, the Court was required by statute to screen the complaint and to dismiss it or any portion thereof that was frivolous, failed to state a claim on which relief may be granted, or sought relief from a defendant immune from such relief. *See* 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).

The Court screened the complaint and on July 19, 2022, the Court issued a memorandum and order (M&O) identifying certain deficiencies that led the Court to conclude that the complaint was subject to dismissal in its entirety. (Doc. 5.) Specifically, the Court pointed out that Plaintiff had improperly joined parties and/or unrelated claims in this action. *Id.* at 7-8. Thus, the Court explained the applicable rules on joinder and directed Plaintiff to file an amended complaint that contained only properly joined defendants and claims.

The M&O also noted that Plaintiff sought relief in his initial complaint that is not available in a civil rights action; he named improper defendants, some of whom are immune from suit; and federal courts generally must abstain from interfering in ongoing state criminal cases. *Id.* at 9-14. Finally, the M&O explained the standards for stating a claim under § 1983 and concluded that one of the

claims in the initial complaint failed to state a claim upon which relief can be granted. *Id.* at 14-18. The Court directed Plaintiff to file a complete and proper amended complaint that cured the identified deficiencies. *Id.* at 18-19.

### III. Amended Complaint

Plaintiff filed his amended complaint on August 18, 2022. (Doc. 7.) The Court conducted the required statutory screening and concluded that the amended complaint, like the initial complaint, was subject to dismissal due to various deficiencies. Thus, on August 22, 2022, the Court issued a second M&O. (Doc. 8.)

The second M&O pointed out that the amended complaint repeated some of the deficiencies the Court had identified in the initial complaint: Plaintiff continued to contain improperly joined claims and/or parties; he named defendants who were improper for reasons explained in the first M&O; he did not name every defendant in the caption and again in the body of the amended complaint, where he was required to allege specific facts describing the unconstitutional acts each defendant took; he sought federal court intervention in his state criminal case without establishing the required circumstances; and it failed to meet the standards for stating a claim under § 1983. *Id.* at 6-12. The second M&O again set forth the law governing these matters, explained the deficiencies, and gave Plaintiff "a final opportunity to file a complete and

3

proper complaint" that cured the identified deficiencies. *Id.* at 13.

**IV. Second Amended Complaint**

The matter comes before the Court for the statutorily required screening of Plaintiff's timely filed second amended complaint. (Doc. 9.) As the factual background for the second amended complaint, Plaintiff asserts that in June 2020, a doctor informed Plaintiff "that he had a tooth causing him problems." *Id.* at 2, 4. Plaintiff then contacted a dentist in Amarillo, Texas, who admitted to Plaintiff that seven years earlier, he had placed implants inside Plaintiff without Plaintiff's knowledge or consent. *Id.* at 4.

On July 21, 2020, Plaintiff was incarcerated at the BCDF, where he "started experiencing mental torture 24 hours a day." *Id.* He sought medical attention, but Sergeant Brad Patzner scheduled a mental assessment of Plaintiff. *Id.* On October 16, 2020, Jennifer Johnson from the Center for Counseling and Consultation conducted the assessment via zoom. *Id.* Although Plaintiff told Johnson about the torture he was experiencing, she labeled him delusional. *Id.*

On March 8, 2022, Plaintiff was transferred to LSH, where he told Dr. Roy G. Daum and psychologist Travis Hamriek that he was being tortured through the implants, but they too chose to label him delusional. *Id.* at 4-5. They failed to properly examine Plaintiff and instead moved forward with involuntary commitment proceedings.

*Id.* at 5. In his second amended complaint, Plaintiff names as Defendants Patzner, Johnson, Daum, and Hamriek.

In Count I of the second amended complaint, Plaintiff asserts that his Eighth Amendment right to be free from cruel and unusual punishment was violated by Johnson's finding that Plaintiff presented with delusional thinking and paranoia. *Id.* at 6, 8. Plaintiff asserts that Johnson "was wilfuly [*sic*] negligent in frivolously diagnosing Plaintiff with Delusional Disorder, not allowing Plaintiff to properly be examined to remove the multiple implants causing problems." *Id.* at 8. Plaintiff alleges that Johnson's actions and her conspiracy with the Barton County Sheriff's Office to cover up Plaintiff's torture has caused Plaintiff to suffer over 750 days of cruel and unusual punishment in the form of significant pain, suffering, trauma, relationship problems, mental distress, depression, isolation, suicidal thoughts, and thoughts of hurting others. *Id.* Finally, Plaintiff asserts that he cannot speak about the ongoing torture or he will be forced to take medication that he does not need for an issue that is caused by his implants. *Id.*

In Count II of the second amended complaint, Plaintiff asserts that his Eighth Amendment right to be free from cruel and unusual punishment was violated. *Id.* at 6. He repeats some of his allegations in Count I about Johnson and also asserts that he believes Patzner received Johnson's findings from the mental

5

assessment. *Id.* at 9. Plaintiff asserts that between "August - September of 2020 [through] March of 2022," he repeatedly requested medical attention to obtain relief from the mental torture. *Id.* He believes that those requests went to Patzner before they reached medical staff. Plaintiff does acknowledge that he eventually saw a nurse at the BCDF, but he alleges that Patzner deliberately ignored other requests for assistance. *Id.* at 9-10. Plaintiff asserts that Patzner was willfully "negligent [by] not providing Plaintiff with adequate medical assistance immediately" and by failing to have him "properly examined" and to "have implants removed." *Id.* at 10. Plaintiff also asserts that Patzner "failed to allow Plaintiff to get [the implants] removed." *Id.* at 11.

In Count III of the second amended complaint, Plaintiff alleges an Eighth Amendment violation based on events at LSH. *Id.* at 7, 11. He asserts that on March 28, 2022, he put in a request to see a dentist but two days later he was informed that the "dentist typically only sees people after 6 months of being" at LSH. *Id.* at 11. In April 2022, Plaintiff wrote to Hamriek and said the implants were torturing him and that the individuals behind the torture were trying to get Plaintiff to commit murder, suicide, or other crimes. Plaintiff received no response. That same month, Plaintiff talked to Hamriek about the torture but Hamriek seemed unconcerned. *Id.* at 11-12.

In May 2022, Daum conducted a five-minute state examination on Plaintiff, during which Plaintiff told Daum about the mental torture. *Id.* at 12. Daum responded that "the Courts are going to claim you are delusional," recommended that Plaintiff was not competent to stand trial, and told Plaintiff "that the torture was probably never going to stop." *Id.* Another report to Hamriek of the torture also failed to result in the implants being removed. *Id.* Plaintiff asserts that his Eighth Amendment rights were violated by Daum's and Hamriek's failure to properly examine Plaintiff, their willful negligence, and their "allowing Plaintiff to continue to be subjected to cruel and unusual punishment." *Id.* Plaintiff also alleges that Daum and Hamriek conspired with Patzner and Johnson to force Plaintiff to keep the implants and to cover up other events. *Id.* at 13.

As relief, Plaintiff asks for a proper examination by a physician unconnected to the defendants, mental health services at a facility unconnected to LSH and its associates, relocation after the completion of the ongoing state criminal case against him, the immediate removal of all implanted devices, injunctive relief, compensatory damages, nominal damages, and punitive damages. *Id.* at 13-14.

**V. Analysis**

As explained in the Court's prior orders, the Court is required by statute to screen the second amended complaint and to dismiss it

or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). The Court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).

After carefully reviewing the second amended complaint, the Court concludes that it is subject to dismissal due to deficiencies of the type that the Court has previously explained to Plaintiff. For example, the Court explained in both of its previous orders the standards for stating a claim under § 1983, including the concepts that a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). (*See* Doc. 5, p. 15; Doc. 8, p. 10.) In the second M&O, the Court specifically advised Plaintiff that it is not sufficient to allege that defendants were "'wil[l]fully negligent and would not allow Plaintiff to be properly examined to get implants removed.'" (Doc. 8, p. 12.) Rather, "[i]n order to state a claim on which relief can be granted, Plaintiff must explain more specifically the actions or inactions by each named defendant by

8

which they 'would not allow' the examination, including dates, whether Plaintiff made a written or verbal request to be seen, etc." *Id.*

Yet in the second amended complaint, Plaintiff continues to generally allege that the defendants "would not allow" or "failed to allow" his medical examination and the removal of his implants. He asserts that Johnson was willfully negligent by "not allowing Plaintiff to properly be examined to remove the multiple implants causing problems." (Doc. 9, p. 8.) He refers to the "mental issue that is being created by the multiple implants Brad Patzner failed to allow Plaintiff to get removed." *Id.* at 11. He also asserts that Daum was willfully negligent by "not allowing Plaintiff to be properly examined to ru[le] out delusional disorder and not allowing Plaintiff to get implants out" and Hamriek "failed to properly examine Plaintiff being wil[l]fully negligent allowing Plaintiff to continue to be subjected to cruel and unusual punishment." *Id.*

Similarly, the second M&O advised Plaintiff that the "conclusory allegations of conspiracy throughout the amended complaint are insufficient to state a claim on which relief can be granted." (Doc. 8, p. 12.) The second amended complaint nevertheless contains conclusory allegations of conspiracy. (*See* Doc. 9, p. 8, 13.)

Although the Court appreciates the additional factual detail included in the second amended complaint, the second amended

9

complaint still does not contain sufficient specific factual allegations to support a plausible claim for relief under § 1983. Even taking all of the factual allegations in the second amended complaint as true, Plaintiff's cause of action boils down to his dissatisfaction with Defendants' conclusion that he is delusional, his symptoms stem from mental problems, and he does not need medical removal of his dental implants. Plaintiff wants Defendants to conclude, as he has, that he is being mentally tortured by implants that require immediate removal.

The United States Supreme Court has explained that "[t]he Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 296 (1991) (citation omitted). This prohibition not only applies to punishments included in a criminal sentence imposed by a court, it also applies to deprivations that are "suffered during imprisonment." *Id.* With respect to deprivations not imposed as part of a criminal sentence, however, "only the '"unnecessary and wanton infliction of pain' implicates the Eighth Amendment." *Id.*

An inadvertent failure to provide adequate medical care or a negligent diagnosis "fail[s] to establish the requisite culpable state of mind" to state a claim under § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been

10

negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Likewise, a mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See id.* at 106-07; *see also Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993)(affirming that a dispute between a prison inmate and doctor about the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim);

Put another way, a prisoner's constitutional right is to medical care, not to the type or scope of medical care he personally desires. A difference of opinion between a physician and a patient or even between two medical providers does not give rise to a constitutional right or sustain a claim under § 1983. *See El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984)(holding that a difference of opinion over the adequacy of medical treatment cannot provide the basis for an Eighth Amendment claim).

The second amended complaint acknowledges that Petitioner has been mentally evaluated on multiple occasions and has at least once seen a medical nurse. It does not allege in sufficient detail additional requests for medical attention Petitioner made that Defendants denied. Even taking all the factual allegations in the second amended complaint as true, it demonstrates that Plaintiff raised his concerns about his implants to Defendants Johnson, Daum,

11

and Hamriek, who concluded that Plaintiff suffers from delusions. Plaintiff's disagreement with this conclusion does not render it or the treatment decisions that result from it unconstitutional. Accordingly, the second amended complaint—like the initial complaint and the amended complaint—does not allege facts that support a plausible claim under § 1983 on which relief can be granted.

**IV. Conclusion**

For all of these reasons, the amended complaint does not cure the deficiencies in the prior complaints, deficiencies the Court in previously concluded rendered this matter subject to dismissal in its entirety. Accordingly, the Court will dismiss this matter for failure to state a claim upon which relief can be granted.

The Court further finds that this dismissal should count as a strike under the Prison Litigation Reform Act (PLRA). Section 1915(g) of the PLRA provides:

> "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court that is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

12

The dismissal of this matter constitutes a strike. Thus, if Plaintiff accumulates two more strikes, he will be unable to proceed in forma pauperis in future federal court civil actions unless he is under imminent danger of serious physical injury.

**IT IS THEREFORE ORDERED** that this matter is **dismissed without prejudice** for failure to state a claim upon which relief can be granted.

**IT IS SO ORDERED.**

DATED:  This 22nd day of September, 2022, at Topeka, Kansas.


S/ Sam A. Crow

SAM A. CROW
U.S. Senior District Judge

13